P-SEND/ENTER/"O"

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| ROSA A. RENDON, | Case No. CV 04-10351-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | |
| Defendant. | |

**I.  Procedural History**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for Social Security Disability Income Benefits.  42 U.S.C. § 405(g).

Plaintiff filed this application for benefits on September 30, 2001, alleging that she has been disabled and unable to work since May 17, 2000, due to pain arising from back and knee injuries, depression and anxiety.  The Social Security Administration denied benefits at the initial and reconsideration stages of the administrative process.  A *de novo* hearing was held on March 19,

2003, before Administrative Law Judge ["ALJ"] Robert A. Evans. (Administrative Record ["AR"] at 50-81).  In a decision dated July 25, 2003, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act at any time prior to the date of the decision. (AR at 32-46).  The Appeals Council denied review and Plaintiff commenced this action for judicial review.

## II.   Factual and Medical History

Plaintiff was born on July 6, 1955, and was 48 years old at the time of the ALJ's decision.  She has the equivalent of a 7th Grade education in Mexico, and has work experience as a floral arranger. (AR at 36).   Plaintiff last worked in May 2000, after injuring herself at work.

In his decision denying benefits, the ALJ found that Plaintiff had the medically-determinable impairments of status post left knee arthroscopy, right knee internal derangement, a lumbosacral spine disc herniation, and major depression, but that these impairments were not severe enough, either singly or in combination, to meet or medically equal any of the regulatory listing of impairments. (Id.).

The ALJ found that Plaintiff retained the residual functional capacity ["RFC"] to perform work at the sedentary exertional level involving simple and repetitive tasks, but was precluded from crawling, pushing and pulling with the lower extremities, pivoting, walking on uneven ground, squatting, climbing or kneeling, and limited to only occasional balancing, stooping, and crouching activities.  The ALJ further found that Plaintiff's psychological impairment resulted in moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning,

moderate difficulties in maintaining concentration, persistence or pace, but no repeated episodes of decompensation. (AR at 37). In making these findings, the ALJ determined that Plaintiff's subjective symptom testimony was not sufficiently credible to warrant restrictions greater than those established by the objective medical record. (AR at 38).

The ALJ found that the limited RFC would prevent Plaintiff from returning to her past work but that based upon the testimony of a vocational expert, she could perform other work existing in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time though the date of the decision. (AR at 40).

In the parties' joint stipulation of issues and contentions, Plaintiff raises four claims of error. She contends that the ALJ erred, first, in failing properly to assess Plaintiff's mental impairment and in failing to give legitimate reasons for rejecting the opinion of Plaintiff's treating psychiatrist; second, in failing properly to assess Plaintiff's subjective symptom testimony and credibility; and third, in failing to pose an accurate hypothetical question to the vocational expert. Plaintiff also contends that the Appeals Council erred in finding that new medical evidence submitted after the hearing did not provide a basis for changing the ALJ's decision. Defendant contends that the ALJ and Appeals Council decisions are free from error and supported by substantial evidence. This matter is ready for decision.
\\
\\

## III. **Standard of Review**

This court's review of the ALJ's conclusions is limited. The claimant has the burden of establishing her entitlement to disability benefits. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The findings of the ALJ are conclusive if supported by substantial evidence based on the record as a whole and if the proper legal standards were applied. 42 U.S.C. § 405(g). *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson,* 402 U.S. at 401. It is more than a scintilla of evidence but less than a preponderance of evidence. *Desrosiers v. Secretary of Health and Human Resources*, 846 F.2d 573, 575-76 (9th Cir. 1988).

Even if the Court might arrive at a different conclusion, an administrative decision must be affirmed if supported by substantial evidence. Where the evidence could support either outcome, the court may not substitute its judgement for that of the ALJ. *Holohan*, 246 F.3d at 1201, *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Where the evidence can be rationally interpreted in more than one way, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). However, the court must review the record as a whole and consider adverse as well as supporting evidence. *Id.; see also Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). With these standards in mind, the Court will analyze Plaintiff's claims.

\\
\\
\\

## IV.   Discussion and Analysis

### (A)   The ALJ Properly Assessed Plaintiff's Mental Impairment

Plaintiff contends that the ALJ erred by failing properly to assess her mental impairment. In particular, Plaintiff contends that the ALJ erred in rejecting the opinion of Plaintiff's treating psychiatrist, Dr. Thomas Curtis, which stated that her depression with anxiety is a "marked" emotional impairment that causes moderate restrictions on her abilities to perform in various ways and renders her unable to work.

Plaintiff received treatment from Dr. Curtis beginning April 18, 2001. On August 16, 2001, in a detailed psychiatric report prepared in connection with Plaintiff's Workers' Compensation claim, Dr. Curtis assessed a slight-to-moderate impairment in her ability to comprehend and follow instructions, and in her ability to perform simple and repetitive tasks. Dr. Curtis also assessed a moderate impairment in Plaintiff's ability to maintain work pace, perform varied and complex tasks, relate to other people, influence other people and accept and carry out responsibility. (AR at 258). Dr. Curtis estimated that Plaintiff had a permanent emotional impairment at the "marked" degree, which would "likely cause marked impairment in her ability" to perform a number of work-related activities, such as getting to work, maintaining a constant work pace, and relating to people at work. (AR at 257). In a Mental Assessment form dated March 4, 2003, Dr. Curtis indicated by means of a series of checked boxes that Plaintiff was markedly limited in nearly every area, and opined that Plaintiff would be "unable to work at any job for the foreseeable future." (AR at 353-55).

\\

In his decision, the ALJ determined that Plaintiff's depression with anxiety was a severe impairment that imposed moderate restrictions on activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. However, the ALJ determined, as set forth above, that these restrictions would not preclude Plaintiff from performing work existing in the local and national economy. In making this determination, the ALJ specifically rejected Dr. Curtis's "unsupported and inconsistent 'marked' findings" of March 4, 2003, for several reasons.

First, the ALJ found that Dr. Curtis's March 4, 2003 report was inconsistent with his August, 2001 evaluation. (See AR at 37-38). The ALJ further found that Dr. Curtis's 2003 report was inconsistent with the opinion of Dr. James Deck, who performed two examinations of Plaintiff at the request of the workers' compensation carrier, and prepared reports dated August 22, 2001, and July 16, 2002. In his second report, Dr. Deck found that Dr. Curtis had relied upon "invalid" psychological testing and Plaintiff's subjective "over-reporting" of symptoms. (AR at 398). The ALJ also found the degree of impairment assessed by Dr. Curtis to be in conflict with the views of the non-examining state agency medical consultants, who found that Plaintiff was, at most, only moderately limited in her ability to understand and carry out detailed instructions, and to interact with the public. (AR at 331-32). Last, the ALJ stated that "if [Plaintiff] were so markedly impaired as [Dr. Curtis] suggests . . she would necessarily be institutionalized and unable to engage in the financial and medical responsibilities she admitted to Dr. Deck." (AR at 38).

The opinions of treating physicians are ordinarily to be given greater weight than the opinions of other physicians. *Aukland v. Massanari*, 257 F.3d 1033, 1037 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). A treating physician's opinion as to the nature and severity of an impairment must be given controlling weight if the opinion is well supported and not inconsistent with other substantial evidence. SSR 96-2p; *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). Even when the treating physician's opinion is contradicted by other medical evidence in the record, that opinion is entitled to deference unless there are specific and legitimate reasons, supported by substantial evidence in the record, for its rejection. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The opinion of a psychologist is given the same weight as that of a physician. *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir. 1995). Finally, under the regulations a treating physician's opinion regarding the ultimate issue of disability is not entitled to any special weight. 20 C.F.R. § 404.1527(e)(3); see also Social Security Ruling 96-5p (stating that opinion that claimant is 'disabled', "even when offered by a treating source, can never be entitled to controlling weight or given special significance").

Because Dr. Curtis's opinion conflicted with the opinion of examining psychologist Dr. Deck in its assessment of the extent of Plaintiff's psychological impairment, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting it. The ALJ did so.

Dr. Deck's opinions, based as they are on independent clinical findings, themselves constitute substantial evidence in support of the ALJ's decision. In such a situation, faced with conflicting

7

opinions from legitimate sources, it is the ALJ's province to weigh the evidence to resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).[1] Because the ALJ properly considered the opinions of both Dr. Curtis and Dr. Deck in light of the entire record, and rejected Dr. Curtis's opinion to the extent that it found greater restrictions than warranted by the medical evidence, the ALJ's determination of Plaintiff's mental impairment was supported by substantial evidence in the record. This claim is without merit.

### (B) **The ALJ's Assessment of Plaintiff's Credibility Was Substantially Supported**

Plaintiff contends that the ALJ erred in his assessment of Plaintiff's credibility because he "gave no cogent reasons for this finding," (Joint Stip. at 10), but relied improperly upon his assertions that Plaintiff insisted upon the use of a Spanish-language interpreter during the hearing despite her good command of English.

In his opinion, the ALJ expressly found that Plaintiff was "not sufficiently credible to warrant restrictions greater than those established by the objective medical record." (AR at 38). The ALJ noted that Dr. Deck's report suggested psychological "over-reporting of symptoms," and that the "Negative Impression Scale suggested a tendency to endorse unusual and somewhat exaggerated expressions of symptomatology." (Id.). The ALJ further found that Plaintiff insisted upon a Spanish-language interpreter at the hearing despite her long presence and work record in the United States, and even though she requested of Dr. Deck that psychological testing be

---

[1] Given that Dr. Deck's opinions properly constitutes substantial evidence, the Court need not address the ALJ's determination that Dr. Curtis's reports of August 16, 2001 and March 4, 2003 were inconsistent.

8

administered in English rather than in Spanish. (AR at 39). In addition, the ALJ found Plaintiff's pain testimony to be incredible: she "testified to a pain level of '9½' out of a possible '10,' '10' being the worst imaginable. Were this so, she would be unable to function at all," (Id.), testimony which contrasted with the medical evidence suggesting a more minimal level of subjective pain. (See AR at 290, 295).

The ALJ also found certain other aspects of Plaintiff's testimony to be inconsistent in that she claimed she was unable to sleep and, therefore, was taking sleeping pills, but subsequently testified that the pills did not help. (Id.). Finally, the ALJ noted a discrepancy between Plaintiff's testimony regarding her daily activities and the statements she provided on the Daily Activities Questionnaire, which suggested a higher level of activity. The court finds that while certain of the reasons given for rejecting Plaintiff's credibility are dubious at best, that rejection is supported by substantial evidence.[2]

Under the governing legal standard, unless there is evidence that a claimant is malingering, the ALJ can only reject the claimant's subjective testimony regarding the severity of his symptoms by making "specific findings stating clear and convincing reasons for doing so". *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 917-18 (9th Cir. 1993).

---

[2] The court finds that Plaintiff had every right to utilize the services of an interpreter if she deemed herself more comfortable testifying in Spanish than English, without that choice adversely affecting her credibility. This is particularly so in the absence of any indication that the use of an interpreter could have resulted in some benefit to her. Similarly, the minor inconsistency regarding the benefit of the use of sleeping pills was meaningless in evaluating credibility.

9

Under this standard, it is not sufficient for the ALJ to make general findings about the claimant's testimony. *Dodrill*, 12 F.3d at 918. Rather, the ALJ must specify which testimony is not credible and state the specific evidence that suggests the testimony is not credible. *Id.* In determining credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as inconsistent statements, unexplained failures to seek treatment, and the daily activities of the claimant. *Smolen*, 80 F.3d at 1284. The ALJ must also consider the "observations of treating and examining physicians and other third parties regarding . . . the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities. *Id*.

As recounted above, the ALJ provided a number of valid reasons referencing specific testimony to discount Plaintiff's credibility. His determination is substantially supported. Significantly, the ALJ noted that Dr. Deck found Plaintiff had a tendency to exaggerate her symptoms.

The record similarly supports the ALJ's finding that the level of pain testified to by Plaintiff was not consistent with any medical finding. Although Plaintiff stated that her pain was almost a "ten" on a scale of one to ten, her treating physician, Dr. Alexander Latteri, noted in only that she complained of "constant slight pain" in her lower back and left knee, and "intermittent slight pain" in her right knee. (AR at 295).

Finally, the ALJ's finding that Plaintiff's testimony regarding her daily activities was inconsistent with her previous representations is also substantially supported. In her daily

activities questionnaire, Plaintiff stated that she cooked once or twice a week, shopped for "light items," did her own laundry, went out daily, and drove her own car. (AR at 111-13). In her testimony during the hearing, Plaintiff stated that in a typical day, she would "stay in her room" and try to sleep, (AR at 65), and that she needed help going to the bathroom or getting dressed. (AR at 67). While these statements are not completely inconsistent, the ALJ was entitled to take into account the discrepancy in the level of activity expressed by Plaintiff in these accounts.

Because the ALJ relied upon legitimate reasons substantially supported by the record for discounting Plaintiff's credibility, her claim is without merit.

##### ©) **The Hypothetical Question Accurately Reflected Plaintiff's Residual Functional Capacity**

Plaintiff contends that the hypothetical question propounded by the ALJ to the vocational expert ["VE"] at the hearing was improper because it used the word "moderate" as defined by Social Security regulations to describe her psychological limitations, not "marked" as found by Dr. Curtis and as used in Workers' Compensation cases.

Following Plaintiff's testimony at the hearing, the ALJ asked the VE a series of hypothetical questions. In his third question, the ALJ asked the VE to consider an individual who, together with a number of physical limitations, had "a mental impairment, which would moderately affect her" in various work-related activities, and would preclude her from maintaining concentration and attention for more than two-hour increments. (AR at 74). The VE responded that such limitations would not impact the individual's ability to perform work existing in the economy. In his following hypothetical, the ALJ

11

amended his definition of "moderate" to imply that "there would be certainly a noticeable affect [sic]. It would not be preclusive. It would be much greater than slight," and applied it to a wider range of work-related activities. (AR at 74-75). The VE responded that "at mid range to the marked end of that moderate range, it would have a serious, if not preclusive, impact on ability to perform any type of work." (AR at 75). Finally, the ALJ asked the VE to consider an individual who was markedly limited in a broad range of work-related activities. The VE agreed that such an individual would not be able to perform any unskilled work. (AR at 76).

Under the governing legal standard, "[i]n order for the testimony of a [VE] to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental, supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (internal quotation marks omitted) (citing *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) ("[T]he ALJ may elicit testimony from a vocational expert, but the hypothetical posed to the vocational expert must consider all of the claimant's limitations.").

The record demonstrates that the ALJ posed a hypothetical question that incorporated Plaintiff's established functional limitations. Indeed, he posed several different hypotheticals that covered a range of limitations. Plaintiff's appears to be contending that it is not clear that any of these hypothetical questions corresponded exactly to her limitations as found by the ALJ. Plaintiff is incorrect.

\\

As set forth above, the ALJ properly rejected the findings of Dr. Curtis that Plaintiff suffered from "marked" limitations in a number of work-related activities, but instead, relied upon the opinions of Dr. Deck and the state agency physicians in determining that Plaintiff was "moderately" limited in various activities. Therefore, the ALJ's third hypothetical corresponds closely to Plaintiff's limitations as supported by the record in that it defined an individual whose mental impairment would have a moderate effect on her social activities, ability to work with others and the public, and concentration, persistence and pace, and would preclude her from concentrating for spans of longer than two hours. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("The ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."). Because the ALJ's hypothetical incorporated those limitations that were substantially supported, he did not err in relying upon the testimony of the VE as to the work that someone with Plaintiff's limitations could perform in the economy. The claim is without merit.

**(D) The Appeals Council Erred in No Considering the New Evidence Submitted After the Hearing**

Plaintiff contends that the Appeals Council failed properly to consider new and material medical evidence submitted after the hearing. Specifically, Plaintiff contends that the rheumatologic report of Dr. Allen Salick, M.D., contains documentation of severe impairments, namely a diagnosis of fibromyalgia, that creates a reasonable possibility that the outcome of the case would be different were the evidence to be considered.

\\

Dr. Salick prepared a rheumatologic consultation report on September 5, 2003, six months after the hearing, and two months after the ALJ issued his decision. In preparing his report, Dr. Salick interviewed Plaintiff, performed a physical examination, performed electrodiagnostic testing, conducted laboratory studies, and took X-rays. (AR at 23-29). Although the electrodiagnostic testing, laboratory studies, and X-rays produced "normal" results, Dr. Salick concluded that Plaintiff suffers from fibromyalgia syndrome, recommended a "comprehensive muscle conditioning exercise program," and prescribed painkillers. He also recommended that she continue therapy with Dr. Curtis. (AR at 29).

As noted above, the Appeals Council denied review of the ALJ's decision. With respect to the submission of Dr. Salick's report, the Council stated that "[t]he [ALJ] decided [Plaintiff's] case through July 25, 2003. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before July 25, 2003." (AR at 6). For the following reasons, the Appeals Council's decision was erroneous and a remand to the Commissioner to consider this new evidence is warranted.

The Appeals Council incorrectly stated that this evidence did not relate to the period of alleged disability on or before July 25, 2003, the date of the ALJ's decision. The hearing transcript demonstrates that Plaintiff was scheduled for an examination regarding fibromyalgia before that date. Indeed, she so informed the ALJ at the hearing.(See AR at 57: "[Kaiser is] going to conduct a test to see if I have fibromyalgia.") Moreover, it is apparent that Dr. Salick's diagnosis relies in part on medical records predating

14

the ALJ's decision and is based on preexisting complaints of back pain.  Because the sole basis for rejecting the submission of Dr. Salick's report was that it allegedly did not relate to the period at issue in Plaintiff's application, the decision of the Appeals Council cannot stand.

Pursuant to 42 U.S.C. § 405(g) a court may at any time order additional evidence to be taken by the SSA, but only if that new evidence "is *material* and [] there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding." *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1984)  (emphasis in original); *see also Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001); 42 U.S.C. § 405(g).  New evidence meets the materiality requirement if it "bear[s] directly and substantially on the matter in dispute" and "there is a reasonable possibility that the new evidence would have changed the outcome." *Booz*, 734 F.2d at 1380 (emphasis in original); *see also Mayes*, 276 F.3d at 462; *Cotton v. Bowen*, 799 F.2d 1403, 1409 (9th Cir. 1986). To demonstrate good cause, a claimant must show that the new evidence was not available earlier. *See Mayes*, 276 F.3d at 463.

Plaintiff has established good cause for presenting the new evidence after the administrative hearing but before th final decision of the Commissioner as the evidence did not exist at the time of the ALJ's decision. *See Mayes*, 276 F.3d at 463; *Burton v. Heckler*, 724 F.2d 1415, 1418 (9th Cir. 1984).  Plaintiff had not been examined for the purpose of diagnosing fibromyalgia until she was seen by Dr. Salick.  She has, therefore, met the good cause requirement.

\\

15

The new evidence is also material because it corroborates Plaintiff's testimony regarding the her level of pain, which the ALJ, without the benefit of Dr. Salick's opinion, discounted as being unsupported. If the ALJ were to review this additional medical evidence, it is reasonably possible that he might not fully discount Plaintiff's credibility, an issue which, in the ALJ's words, "is the key to this case." (AR at 39).

The fact that Plaintiff has been diagnosed by one physician as suffering from fibromyalgia syndrome does not necessarily establish her entitlement to benefits. However, this new evidence is sufficient to create a reasonable possibility that it would have changed the outcome.[3]

## V. Conclusion

For the reasons stated above, Plaintiff has presented new and material evidence that warrants remand to the Commissioner for consideration. Therefore, it is **ORDERED** that Plaintiff's Motion for Summary Judgment be **GRANTED** as to remand and that Defendant's Motion for Summary Judgment be **DENIED.**

Dated: August 31, 2005

                                                  /s/ Marc L. Goldman
Marc L. Goldman
United States Magistrate Judge

---

[3] It is clear that fibromyalgia is a medically-recognized condition that can be difficult to diagnose, which might explain why an opinion about this condition was not submitted earlier. *See Benecke v. Barnhart*, 379 F.3d 587, 591 (9th Cir. 2004).